<u>**_Gromova v. Gee-Shepherd_, 19-CV-05356 (AMD) (SJB)**</u>
**Memorandum of Understanding Regarding Settlement Between Petitioner and Respondent**

This binding Memorandum of Understanding is entered into between Petitioner Kristina Gromova and Respondent Brian Gee-Shepherd per the Court's Order dated October 8, 2020. The parties have reached an agreement in principle providing for the proposed settlement of the above-referenced action on the terms and conditions set forth below.

The parties shall submit a final written settlement agreement (the "Agreement") for Court approval by November 13, 2020. The Agreement shall include provisions for choice of law, choice of forum, breach and cure, enforcement, and modification. The parties' intent is to be bound by the terms of this Memorandum of Understanding as if it were an Order, with the Agreement to be approved by the Court.

It is the parties' intention that this Agreement shall resolve the custody and visitation actions pending in the New York Family Court and the New York Supreme Court.

The parties recognize that these are the more salient terms of their agreement, all of which will be expanded and clarified in the comprehensive Agreement.

The provisions contained in this Memorandum of Understanding and the Agreement shall not be deemed a presumption, concession or admission of the parties of any violation, law, breach of duty, liability, default or wrongdoing as to any facts or claims alleged or asserted in the Hague Proceeding, or in any other actions or proceedings, and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in this matter or during any other action or proceeding of any nature whatsoever.

The terms agreed upon by the parties in principle are as follows:

1. Petitioner will have sole legal custody of the parties' minor child, E.G.S. Prior to making a decision for E.G.S. concerning a major issue (a "Major Issue"), defined as decisions related to E.G.S.'s education (including, but not limited to, choice or change of school and college), health care (including emergency and non-emergency treatment, such as hospitalization, surgery, treatment plans, etc.), and camp or comparable summer activity, Petitioner shall advise and consult with Respondent in good faith and without delay according to the timeline and procedures to be set forth in the Agreement, but Petitioner shall have the right to make the final decision in the event of disagreement.

2. Respondent will have access to E.G.S.'s medical and educational providers and all related information. Such access and information shall be provided to Respondent for informational purposes only and shall not be used as part of any family law proceeding, unless the health or safety of E.G.S. is determined to be at risk. Upon Petitioner and E.G.S.'s relocation to Estonia in August 2021, Petitioner shall cooperate to ensure that E.G.S.'s medical and educational providers are informed that Respondent shall have

access to E.G.S.'s information. Except as to be set forth in the agreement, Respondent shall not disclose any information obtained regarding E.G.S. to any third parties.

3. Neither party shall prevent E.G.S. from receiving any medical treatment that is deemed by a doctor or other qualified healthcare professional to be medically necessary, regardless of their religious beliefs.

4. Petitioner and E.G.S. will remain in the U.S. until August 15, 2021, at which time they shall have the right to move to Estonia.

5. The following schedule for parental access in the U.S. ("Regular Parenting Schedule in U.S.") shall commence on the first weekend following the execution of the Agreement:

   (a) Respondent will have parenting time with E.G.S.: (i) every other weekend from 7 p.m. on Thursday to 6 p.m. on Sunday; and (ii) a three-hour dinner on alternate weeks, with the exact day to be set in the Agreement.

   (b) During E.G.S.'s 2020-2021 winter vacation from school, the parties shall follow the Regular Parenting Schedule in the U.S., and Respondent shall have  access from 5 p.m. on December 24 through 8 p.m on December 29.

   (c) The Regular Parenting Schedule in the U.S. shall continue during E.G.S.'s February and Spring vacations from school.

   (d) Respondent will have access with E.G.S. for one week at the end of June/early July 2021 and one week in at the end of July, with the exact dates to be set in the Agreement.

   (e) When Respondent is with E.G.S., on Thursday evenings, Friday mornings and Sunday evenings, he shall ensure that (i) her homework is completed, (ii) she has a packed school lunch, (iii) she is wearing clothing in the colors required by the school (burgundy and grey), and (iv) she is dressed appropriately for the weather. The parties shall include in the Agreement provisions related to the breach and cure period of this term.

   (f) Respondent will not take E.G.S. to any casinos or to any other type of gambling activity of any kind during his access periods. This provision shall be further defined and clarified in the Agreement.

   (g) Neither party is to take E.G.S. out of New York State overnight from the execution of this Memorandum of Understanding through August 15, 2021, except with the prior permission in writing (e-mail sufficing) of the other parent.

   (h) If Petitioner and E.G.S. stay in the U.S. beyond August 15, 2021 or relocate to the U.S. after that time, the Regular Parenting Schedule in the U.S. shall continue or resume.

    (i)   Provided that Petitioner substantially complies with her obligations under the Agreement, as will be more fully set forth in the Agreement, Respondent shall not attempt to restrain or delay Petitioner or E.G.S. from relocating to Estonia on August 15, 2021 or thereafter on any basis.  Both parties' rights to enforce the Agreement in the event of any breach shall be addressed in the Agreement.

6.   The following schedule for parental access shall commence when Petitioner and E.G.S. move to Estonia in July 2021:

    (a)   Commencing in the summer of 2022, Respondent shall have access to E.G.S. in the U.S. during four consecutive weeks over E.G.S.'s summer vacation each year. Petitioner will accompany E.G.S. to the U.S., and to the extent she is unable, a friend or family member may accompany E.G.S. to the U.S. until she is 14 years of age.  Petitioner will pay for her own or the friend / family member's transportation costs to the U.S.  Respondent will pay for E.G.S.'s transportation costs to and from the U.S. and accompany E.G.S. to Estonia at the conclusion of the access period.

    (b)   Respondent will have parenting time with E.G.S. in Estonia during her winter and spring vacations from school.  The exact time frames of all visits are to be agreed upon by the parties, but shall be no less than a consecutive five-day period for a one week vacation, and no less than a consecutive ten day period for a two week vacation. When E.G.S. is with Respondent in Estonia, he shall abide by the terms of the video calls as detailed below and as further set forth in the Agreement.

    (c)   Respondent may visit E.G.S. in Estonia up to an additional five times per year, with the exact time frames to be agreed upon by the parties.  At all times when Respondent is visiting E.G.S in Estonia, he shall ensure that any homework assigned to E.G.S. during the period in which he is with her, shall be completed prior to E.G.S. being returned to Petitioner.

    (d)   Respondent will have two video calls per week with E.G.S. for 15 to 30 minutes (or as long as E.G.S. is engaged and able to stay on the call) and Petitioner shall use her best efforts to schedule a third call each week.  The exact days of such video calls shall be set forth in the Agreement.

    (e)   While E.G.S. is in the U.S. with Respondent for her summer vacation and when she is with Respondent in Estonia for vacation or a visit, Petitioner will have two video calls per week with E.G.S. for 15 to 30 minutes (or as long as E.G.S. is engaged and able to stay on the call) and Respondent shall use his best efforts to schedule a third call each week.  The exact days of such video calls shall be set forth in the Agreement.

    (f)   Should Respondent relocate to Estonia, the Regular Parenting Schedule in the U.S. and the associated provisions shall become effective.

7. Petitioner will not relocate or travel with E.G.S. to a country that is not a signatory to the Hague Convention.

8. Upon E.G.S.'s move to Estonia on August 15, 2021, Petitioner shall hold E.G.S.'s U.S. and Estonian passports. Petitioner will renew E.G.S.'s passport when necessary at the U.S. Consulate in Estonia. Respondent shall pay the associated costs of renewal.

9. Petitioner will not take E.G.S. publishing before her seventh birthday.

10. Both parties shall take a parenting class within 60 days of the execution of the Agreement and shall provide the other with a certificate of completion by email. Respondent is to be responsible for the associated cost, subject to an agreed upon cost cap.

11. After the execution of the Agreement, Petitioner shall enroll in a course of therapy as recommended by her treating therapist for six months, and attend no less than 12 sessions. Petitioner shall confirm that her insurance plan does not cover therapy. If her insurance covers some portion, Respondent shall be responsible for the remainder, and shall pay on a monthly basis, subject to an agreed upon cost cap. If Respondent fails to pay such cost, Petitioner shall have the right to discontinue the therapy. Petitioner shall have the sole right to select her provider, so long as the therapist is licensed in the State of New York. Respondent shall continue to attend therapy for six months from the execution of the Agreement. Neither party shall have any contact with the other party's therapist nor have any access to any writings, notes, records or any other materials or documents, except that at the conclusion of Petitioner's therapy, an affirmation of attendance shall be provided to counsel. Neither party's participation in therapy shall be construed as an acknowledgment or admission of any psychological or psychiatric issues and shall not be used against either party in any subsequent custody or other proceeding between the parties.

New York, New York
October 14, 2020

_____
*Petitioner Kristina Gromova*

KRAUSS SHAKNES
TALLENTIRE & MESSERI, LLP

_____
Valentina Shaknes
Justine Stringer
350 Fifth Avenue, Suite 7620
New York, NY 10118
(212) 228-5552

*Attorneys for Petitioner, Kristina Gromova*


_____
*Respondent Brian Gee-Shepherd*


_____
Christina A. Pryor
One Manhattan West
New York, NY 10001
(212) 735-3317

*Attorney for Respondent, Brian Gee-Shepherd*